IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SENTINEL INSURANCE COMPANY LTD. and HARTFORD CASUALTY INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:17CV211 |
| JAMES S. FARRIN P.C. and JAMES S. FARRIN, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

James S. Farrin and James S. Farrin P.C. (together, "Farrin"), a lawyer and his firm, are named defendants in a putative class-action lawsuit currently pending before this Court, *Garey, et al. v. James S. Farrin, P.C., et al.*, No. 1:16-cv-542 (the "underlying action"). The plaintiffs in the underlying action allege that Farrin violated the Driver's Privacy Protection Act of 1994, 18 U.S.C. § 2721 *et seq.* ("DPPA"), by obtaining their names and addresses from automobile accident reports and using that information for marketing purposes.[1]

Farrin tendered defense of the underlying action to Sentinel Insurance Company Ltd. and Hartford Casualty Insurance Company (the "Insurers"),[2] which had issued a series of

---

[1] The operative complaint in the underlying action was provided as an attachment to the amended complaint in this case. (*See* ECF No. 26 at 20–85.)

[2] The Insurers temporarily agreed to defend Farrin in the underlying action, but did so under a full reservation of rights. (*See* ECF No. 29 at 2.)

business-liability policies to Farrin between July 2011 and July 2017 (the "Policies").[3] (*See* ECF Nos. 26 at 4–5; 28 at 1.) The Insurers initiated this action shortly thereafter, seeking a declaration that the Policies do not provide coverage for the claims asserted in the underlying action and that, as a result, they have no duty to defend or indemnify Farrin. (*See* ECF No. 26 at 17.) They now move for judgment on the pleadings. (ECF No. 30.) For the reasons that follow, their motion will be granted.

## I. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Such a motion "is assessed under the same standards as a motion to dismiss under Rule 12(b)(6)," *Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013)—that is, the reviewing court "takes the facts in the light most favorable to the non-moving party, but it need not accept as true unwarranted inferences, unreasonable conclusions, or arguments," *see Blue Rhino Glob. Sourcing, Inc. v. Well Traveled Imports, Inc.*, 888 F. Supp. 2d 718, 721 (M.D.N.C. 2012) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

Along with the complaint and the answer, when ruling on a 12(c) motion, a court may also consider documents integral to and explicitly relied on in the pleadings, so long as there is no question about their authenticity. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). As such, this Court will consider—in addition to the allegations in the

---

[3] The Policies all have the same material terms. Copies of each were appended to the amended complaint, (ECF No. 26 at 152–592), or to the briefing accompanying the instant motion, (ECF Nos. 31-1; 31-2; 31-3; 32-1).

2

pleadings themselves—the operative complaint in the underlying action, as well as the applicable Policies in evaluating the Insurers' motion.

## II. DISCUSSION

In North Carolina,[4] the interpretation of language in an insurance policy is a question of law for the Court. *Nat'l Quarry Servs., Inc. v. First Mercury Ins. Co.*, 372 F. Supp. 3d 296, 302 (M.D.N.C. 2019) (quoting *N.C. Farm Bureau Mut. Ins. Co. v. Mizell*, 530 S.E.2d 93, 95 (N.C. Ct. App. 2000)). "[T]he object of construing an insurance policy is to arrive at the insurance coverage intended by the parties when the policy was issued." *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 692 S.E.2d 605, 612 (N.C. 2010). Clear and unambiguous language must be enforced as written. *Cont'l Cas. Co. v. Amerisure Ins. Co.*, 886 F.3d 366, 371 (4th Cir. 2018). However, ambiguities are resolved (within reason) against the insurance company. *Id.* Relatedly, provisions extending coverage are viewed liberally, whereas those excluding coverage are construed narrowly. *Harleysville*, 692 S.E.2d at 612. This is in keeping with the "well settled [rule] in North Carolina that insurance policies are construed strictly against insurance companies and in favor of the insured." *See State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 350 S.E.2d 66, 73 (N.C. 1986).

In deciding whether an insurer has a duty to defend, the reviewing court compares the underlying complaint and the relevant policies side-by-side to determine "whether the events

---

[4] As a federal court sitting in diversity, this Court is bound to apply the choice-of-law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co. Inc.*, 313 U.S. 487, 496–97 (1941). North Carolina generally follows the rule of *lex loci contractus*, meaning "the substantive law of the state where the last act to make a binding contract occurred, usually delivery of the policy, controls the interpretation of the contract." *Fortune Ins. Co. v. Owens*, 526 S.E.2d 463, 466 (N.C. 2000). The applicable Policies were issued in North Carolina. (*See, e.g.*, ECF No. 26 at 156.) Thus, the Court must interpret them according to North Carolina law.

as alleged are covered or excluded." *See Harleysville*, 692 S.E.2d at 610. In the course of this analysis, the insured must initially show that the alleged underlying facts arguably fall within the policy's coverage. *Kubit v. MAG Mut. Ins. Co.*, 708 S.E.2d 138, 147 (N.C. Ct. App. 2011). Once that burden is met, the onus "shifts to the insurer to prove that a policy exclusion excepts the particular injury from coverage." *Id.* If the insurer is successful, the burden shifts back to the insured to "prov[e] that an exception to the exclusion exists and applies to restore coverage." *See Home Indem. Co. v. Hoechst Celanese Corp.*, 494 S.E.2d 774, 783 (N.C. Ct. App. 1998). Ultimately, "if the insurance policy provides coverage for the facts as alleged," then the insurer has a duty to defend; however, if the allegations are "not within, or [are] excluded from, the coverage provided by the insurance policy," then no such duty arises. *See Harleysville*, 692 S.E.2d at 611.

Unlike the duty to defend, which hinges on the facts *as alleged* in the underlying complaint, the duty to indemnify is ordinarily "measured by the facts [as] ultimately determined at trial." *Id.* at 610. That said, once the court finds that there is no duty to defend, then it must also find that there is no duty to indemnify; if there is no coverage when the alleged facts are accepted as true, there certainly won't be coverage when those same facts become subject to dispute. *See Liberty Corp. Capital, Ltd. v. Delta Pi Chapter of Lambda Chi Alpha*, No. 1:09cv765, 2012 WL 3308371, at *3 (M.D.N.C. Aug. 13, 2012) (quoting *Penn–America Ins. Co. v. Coffey*, 368 F.3d 409, 413 (4th Cir. 2004)); *see also N.C. Farm Bureau Mut. Ins. Co., Inc. v. Phillips*, 805 S.E.2d 362, 366 (N.C. Ct. App. 2017) ("Because the duty to defend may be broader than the duty to indemnify . . . if it fails, so too does the duty to indemnify.").

On two separate occasions, the Western District has applied the standards outlined above to coverage disputes involving the same or similar underlying actions as in this case and insurance policies that were virtually identical to those at issue here. In both cases, the court found that the insurer had neither a duty to defend nor a duty to indemnify. *See Hartford Cas. Ins. Co. v. Gelshenen*, 387 F. Supp. 3d 634, 642 (W.D.N.C. 2019); *Hartford Cas. Ins. Co. v. Greve*, No. 3:17CV183-GCM, 2017 WL 5557669, at *5 (W.D.N.C. Nov. 17, 2017). In both cases, the Fourth Circuit affirmed. *See Hartford Cas. Ins. Co. v. Davis & Gelshenen, LLP*, 801 F. App'x 915, 917 (4th Cir. 2019) (per curiam); *Hartford Cas. Ins. Co. v. Ted A. Greve & Assocs., PA*, 742 F. App'x 738, 741–42 (4th Cir. 2018) (per curiam). Farrin makes no attempt to distinguish those cases, and this Court finds no reason to deviate.

The underlying action asserts that Farrin unlawfully obtained and used certain "protected personal information"—allegations which, Farrin contends, implicate coverage in the Policies for "personal and advertising injury," as that term is defined therein.[5] (*See* ECF Nos. 26 at 44–45; 33 at 8.) However, even assuming that the underlying action alleges a "personal and advertising injury," two separate exclusions in the Policies unambiguously bar coverage. The first excludes coverage for injury "[a]rising out of the violation of a person's right of privacy created by any state or federal act."[6] (*See, e.g.*, ECF No. 26 at 280.) As the

---

[5] As defined in the Policies, "'Personal and advertising injury' means injury, including consequential 'bodily injury' arising out of one or more of [several] offenses," including "[o]ral, written or electronic publication of material that violates a person's right of privacy." (*See, e.g.*, ECF No. 26 at 294–95.)

[6] The DPPA is just such a statute. As the Supreme Court explained in *Maracich v. Spears*, the DPPA arose out of the "[c]oncern[ ] that personal information collected by States in the licensing of motor vehicle drivers was being released—even sold—with resulting loss of privacy for many persons." *See* 570 U.S. 48, 51–52 (2013). The resulting provisions, which enable suits against those who disclose personal information, "clearly, unambiguously, and expressly" create a right to privacy in personal

5

only claim in the underlying action against Farrin is for alleged violations of the DPPA, this exclusion clearly applies. There is an exception to this exclusion for "liability for damages that the insured would have in the absence of such state or federal act," *i.e.*, those remedies available at common law. (*See id.*) However, the Fourth Circuit has twice held that that exception is inapplicable because "the right of privacy that the defendants [in the underlying actions] are alleged to have invaded is the right created and protected by [the DPPA], not by the common law of North Carolina." *See, e.g.*, *Greve*, 742 F. App'x at 741. In light of those holdings, Farrin's arguments to the contrary prove unavailing. (*See* ECF No. 33 at 10.)

The second relevant exclusion omits coverage for injuries arising "directly or indirectly" from alleged violations of "[a]ny statute . . . that prohibits or limits the sending, transmitting, communicating or distribution of material information." (*See, e.g.*, ECF No. 26 at 281.) The DPPA makes it generally "unlawful for any person knowingly to . . . disclose personal information[ ] from a motor vehicle record." *See* 18 U.S.C. § 2722. By its plain language, then, the DPPA is a statute which, per the exclusion, "limits the . . . communicating or distribution of material information." Because all of the allegations against Farrin in the underlying complaint stem "directly or indirectly" from alleged violations of the DPPA, this exclusion also operates as a bar to coverage. *See Gelshenen*, 387 F. Supp. 3d at 642 (reaching this conclusion); *Greve*, 2017 WL 5557669, at *5 (same).

---

information contained in motor vehicle records. *See Collier v. Dickinson*, 477 F.3d 1306, 1309 (11th Cir. 2007).

6

In sum, having compared the pleadings in the underlying action with the Policies, this Court concludes—as the Western District and the Fourth Circuit have in nearly identical cases—that the Insurers bear no duty to defend or indemnify Farrin.

For these reasons, the Court enters the following:

## ORDER AND DECLARATION

IT IS THEREFORE ORDERED that the Insurers' Motion for Judgment on the Pleadings, (ECF No. 30), is GRANTED, and Farrin's related Counterclaims are DISMISSED WITH PREJUDICE.

Further, it is DECLARED that the Insurers have no duty under the Policies to defend or indemnify Farrin in connection with the underlying action, *Garey, et al. v. James S. Farrin, P.C., et al.*, No. 1:16-cv-542.

This, the 24th day of June 2020.

/s/Loretta C. Biggs
United States District Judge